UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

J.V. MANUFACTURING, INC.,    :

                     **Plaintiff,**    :       **CIVIL ACTION NO. 3:22-cv-412**

             **v.**    :         **(JUDGE MANNION)**

DEMATIC CORP.,    :

                  **Defendant.**    :

                            :

## MEMORANDUM

The case centers on indemnification and contribution arising out of a voluntary settlement by J.V. Manufacturing, Inc. ("Plaintiff") with Michael Dunsmore ("Dunsmore") for an underlying action involving an injury Dunsmore suffered when a co-worker closed the hydraulic door latch on a horizontal baler manufactured by Plaintiff, amputating Dunsmore's arm. Before the Court is Dematic Corp.'s ("Defendant") motion for summary judgment. (**Doc. 67**). For the reasons set forth below, Defendant's motion will be **DENIED.**

## I.   BACKGROUND[1]

In 2009, Andrew Jacobs ("Jacobs"), an account representative for Defendant, and Dave DiPipi ("DiPipi"), a representative for Walmart, responded to a request for a proposed project at a Walmart facility in Tobyhanna, Pennsylvania. (Doc. 68, ¶ 14); (Doc. 73, ¶ 14). Defendant provided the baler as part of a "turn-key package" for Walmart, whereby Defendant would order the baler directly from Plaintiff, to then install at the Walmart facility. (Doc. 68, ¶ 17); (Doc. 68-3); (Doc. 73, ¶ 17). As a part of the project, Plaintiff sold the subject HX-72 horizontal cardboard baler (the "baler") to Defendant. (Doc. 68, ¶ 1); (Doc. 73, ¶ 1). Defendant, a provider of supply chain automation solutions, installed the baler at the Walmart facility in Tobyhanna in October 2009. (Doc. 68, ¶¶ 2-3); (Doc. 68-4); (Doc. 73, ¶ 3).

According to Plaintiff's representative Greg Staggs ("Staggs"), Plaintiff shipped the baler largely assembled. (Doc. 68, ¶ 21); (Doc. 68-5 at 35-36); (Doc. 73, ¶ 21). According to Defendant, the photos from its project file

---

[1] As required by Local Rule 56.1, Defendant has filed a statement of material facts. (Doc. 68). Rule 56.1 also requires that the party opposing a motion for summary judgment file a statement responding to the numbered paragraphs in the movant's statement of material facts. Plaintiffs have filed a "Response and Counter Statement of Material Facts." (Doc. 73).

demonstrate that the baler was shipped with the control panel on the right side. (Doc. 68, ¶ 22); (Doc. 75). Plaintiff agrees that it sold and shipped the bailer to Defendant with the controller located on the right side. (Doc. 73, ¶ 22).

On December 30, 2015, while Dunsmore was working at Walmart, he was operating the baler. (Doc. 68, ¶ 6); (Doc. 73, ¶ 6). Dunsmore's left arm was amputated by the latch on the baler when his colleague – who reportedly could not see Dunsmore from his position operating the control panel located on the other side of the baler – closed the hydraulic latch. (Doc. 68, ¶ 8); (Doc. 73, ¶ 8). At some point between the baler's shipment and the underlying injury, the control panel was relocated from the right side of the baler to the left side.

In November 2017, Dunsmore filed suit against Plaintiff in the Lackawanna County Court of Common Pleas; Dunsmore did not sue Defendant. (Doc. 68, ¶ 5); (Doc. 73, ¶ 5). In the underlying cause of action, Dunsmore alleged that the control panel's placement on the left made it more difficult to verify the latch area was clear before latching the door. (Doc. 68, ¶ 8); (Doc. 73, ¶ 8). In September 2022, Dunsmore and Plaintiff reached a settlement in the underlying case for a confidential amount paid to Dunsmore. (Doc. 68, ¶ 9); (Doc. 73, ¶ 9); *see also* (Doc. 36-3).

After Dunsmore and Plaintiff reached the settlement, Plaintiff sued Defendant for indemnification and contribution, based on allegations of Defendant's role as the installer of the baler in 2009. (Doc. 68, ¶ 10); (Doc. 73, ¶ 10). Specifically, Plaintiff alleges that "[Defendant] materially altered/changed the form, layout and/or design of the subject baler from its original condition at the time of manufacture and delivery by [Plaintiff] by, *inter alia*, repositioning the machine operator panel in such a manner that the operator could not reasonably observe the baler door close point." (Doc. 36, ¶ 10). Plaintiff alleges that Defendant therefore "installed the subject baler in the Walmart Distribution Center so as to negligently create a dangerous defective condition of an otherwise safe machine as originally designed and manufactured." *Id.*

Defendant filed the instant motion for summary judgment on January 16, 2026, and the corresponding brief on January 30, 2026 (Docs. 67, 69). Plaintiff filed its brief in opposition on March 2, 2026. (Doc. 72). Defendant filed a reply brief to Plaintiff's brief in opposition on March 23, 2026. (Doc. 74). Plaintiff filed a sur-reply brief on April 9, 2026. (Doc. 78). This matter is now ripe for disposition.

## II.   LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is [(1)] no genuine issue as to any material fact and [(2)] that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *see also Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). Material facts are those that "might affect the outcome of the suit under the governing law," and a dispute is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *see also Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (holding that a court may not weigh the evidence or make credibility determinations). Rather, the court must consider all evidence and inferences drawn therefrom

in the light most favorable to the non-moving party. *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007).

To prevail on a motion for summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323–24. The moving party can discharge that burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003); *see also Celotex*, 477 U.S. at 325. The moving party's burden has recently been explained this way:

> In interpreting Rule 56, the Supreme Court has outlined two closely related methods for a movant to succeed at summary judgment. First, under the standard approach, the moving party may produce material facts, established as genuinely undisputed, that entitle it to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–52 (1986) (explaining the meaning of the terms 'material' and 'genuine'). Second, under the *Celotex* approach, a moving party may instead demonstrate that the nonmoving party has not made "a showing sufficient to

establish the existence of an element essential to that party's case … *on which that party will bear the burden of proof at trial.*" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (emphasis added).

*Mall Chevrolet, Inc. v. General Motors LLC*, 99 F.4th 622 (3d Cir. 2024).

If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). However, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322–23; *Jakimas v. Hoffman-La Roche, Inc.*, 485 F.3d 770, 777 (3d Cir. 2007).

## III.   DISCUSSION

The largest point of contention in the case before this Court is whether Defendant installed the baler with the control panel on the opposite side of the hydraulic latch. Defendant claims that it installed the baler in accordance

with Plaintiff's instructions, with the latch and control panel on the same side of the baler. (Doc 68, ¶ 24); (Doc. 68-8 at 60-61). However, Plaintiff claims that if Defendant installed the baler in accordance with Plaintiff's instructions, Defendant would have been in violation of its contract with Walmart, because the installation would have been noncompliant with the National Electric Safety Code and OSHA. (Doc. 73, ¶ 24); (Doc. 72-1 at 19); (Doc. 72-4 at 49, 78-79); (Doc. 72-5 at 46). Specifically, the National Electric Code requires a clearance of at least forty-two inches from the operator's position in front of the control panel; however, due to the conveyor belt located next to the baler, the control panel's clearance in the original orientation would have only been about twenty-three inches. (Doc. 73, ¶ 35); (Doc. 72-2 at 18-19); (Doc. 72-4 at 67). Plaintiff's expert, Troy Graham ("Graham") opines that the control panel's original location when shipped to Defendant violated the National Electric Code given its placement within the Walmart facility. (Doc. 37, ¶ 30); (Doc. 68-7). Graham stated that "based [on] the Master Agreement, it definitely appears like [Defendant] would have the responsibility to correct that" prior to turning over the completed project. (Doc. 73); (Doc. 72-5 at 46-47). Therefore, Plaintiff argues that Defendant relocated the control panel when it commissioned the baler. (Doc. 73, ¶ 30).

Defendant argues that had it been requested to relocate the control panel due to insufficient room on the right side, there would have been a written change order reflecting such a request. (Doc. 68, ¶ 31); (Doc. 68-5 at 59-60). However, Plaintiff argues that a change order would not have been necessary if the work needed was part of the scope of Defendant's contract—any questions could have been resolved with "just a phone call." (Doc. 73, ¶ 31); (Doc. 72-4 at 93).

Defendant contends that because Walmart did extensive maintenance work on the baler, that Walmart must have relocated the control panel to the left side of the baler prior to Dunsmore's injury. (Doc. 68, ¶ 39, ¶ 42). However, Jacobs testified that Defendant and Walmart were under contract wherein Defendant was obliged to install and commission the baler. (Doc. 73, ¶ 41); (Doc. 72-1 at 16, 19). Furthermore, Plaintiff argues that because Defendant was duty-bound to ensure compliance with "any laws, ordinances, statutes, state and local laws, statutes, rules, regulations, and ordinances," Defendant would have addressed and corrected any violations by moving the control panel to the other side. (Doc. 73, ¶ 41); (Doc 72-1 at 43); (Doc 72-2 at 25).

**A. Contribution**

Defendant argues that it is entitled to summary judgment for Plaintiff's contribution claim. (Doc. 67). Under Pennsylvania law, contribution is authorized among joint tortfeasors. 12 Pa.C.S. §2082 *et seq*. The Pennsylvania Supreme Court has explained:

> The system of contribution among joint tortfeasors, of which [the Uniform Contribution Among Tort-feasors Act (UCATA)] apportionment rules are a key component, *has arisen completely apart from the system of vicarious liability and indemnity* and meets an entirely distinct problem: how to compensate an injury inflicted by the acts of more than one tortfeasor. Unlike the liability of a principal, *the liability of a joint tortfeasor is direct (because the tortfeasor actually contributed to the plaintiff's injury)* and divisible (since the conduct of at least one other also contributed to the injury).

*McLaughlin v. Nahata*, 298 A.3d 384, 394 (Pa. 2023) (quoting *Mamalis v. Atlas Van Lines, Inc.*, 560 A.2d 1380, 1383 (Pa. 1989) (emphasis added).

§8322 of the UCATA provides that "'joint tort-feasors' means two or more persons jointly *or* severally liable in tort for the same injury to persons or property, whether or not judgment has been recovered against all or some of them." *McLaughlin*, 298 A.3d at 395 (quoting 42 Pa.C.S. §8322). This definition of "joint tort-feasors" is "exceedingly broad and goes beyond the

traditional meaning of the term." *McLaughlin,* 298 A.3d at 395 (quoting *Saranillio v. Silva*, 889 P.2D 685, 694 (Haw. 1995) (internal citations omitted). As the Pennsylvania Superior Court has noted:

> The focus of the [UCATA] is on the relationship existing between tortfeasors rather than the manner in which several tortfeasors have been held liable to an injured claimant. In *Puller v. Puller* [380 Pa. 219], 110 A.2d 175, 177 (1955), the [Pennsylvania] Supreme Court observed that "contribution is not a recovery for the tort . . . but the enforcement of an equitable duty to share liability for the wrong done." Thus, a tortfeasor's right to receive contribution from a joint tortfeasor derives not from his liability to the claimant but rather from the equitable principle that once the joint liability of several tortfeasors has been determined, it would be unfair to impose the financial burden of the plaintiff's loss on one tortfeasor to the exclusion of the other. It matters not on which theory a tortfeasor has been held responsible for the tort committed against the plaintiff. So long as the party seeking contribution has paid in excess of his or her share of liability, it would be inequitable under the [UCATA] to deny that party's right to contribution from a second tortfeasor who also contributed to the plaintiff's injury.

*Encompass Ins. Co. v. Stone Mansion Rest. Inc.*, 902 F.3d 147 (3d Cir. 2018) (quoting *Svetz v. Land Tool Co.,* 513 A.2d 403, 407 (Pa. Super. 1986).

When settlement occurs before the original plaintiff has proven his case at trial, a settling tortfeasor may seek contribution from a non-settling party if the settling tortfeasor: (1) demonstrates that he and the non-settling party are joint tortfeasors with respect to the original plaintiff, (2) has discharged the common liability or paid more than his *pro rata* share, and (3) has extinguished the liability of the non-settling joint tortfeasor to the original plaintiff by virtue of the settlement. *Swartz v. Sunderland*, 169 A.2d 289, 291 (Pa. 1961).

Here, Defendant argues that "[W]here the defendants in a contribution action were not defendants in the original case, the party seeking contribution must stand in the shoes of the original plaintiff and prove that the new defendant was a joint tortfeasor in that his tortious conduct also caused the harm at issue." (Doc. 69) (citing *Mattia v. Sears, Roebuck & Co.*, 531 A.2d 789, 791 (Pa. Super. 1987). Defendant claims, therefore, that since Dunsmore would not have had a claim against Defendant, neither may Plaintiff. *Id.*

To support its argument, Defendant claims that Plaintiff's sole theory of liability is that Defendant relocated the baler's control panel, yet Plaintiff provided no affirmative evidence in support of its claim. *Id.* at 13. Defendant points to the fact that there is no documentation showing that Defendant

- 12 -

moved the control panel, and no witness recalls that such work was ever requested. *Id.* at 13-14. Therefore, Defendant argues that Walmart must have relocated the control panel. *Id.* Because there may be insufficient evidence for Plaintiff to establish that Defendant is a joint tortfeasor, to survive summary judgment, Plaintiff must show sufficient evidence to support a jury verdict in its favor. *Boyle*, 139 F.3d at 393.

Plaintiff argues that there is more than ample evidence suggesting that Defendant relocated the baler's control panel, and at a minimum, there exist clear triable issues of material fact. (Doc. 72 at 7). Plaintiff represents that pursuant to the contract between Defendant and Walmart, Defendant was required to ensure that its work was not "in violation of any laws, ordinances, statutes, rules, codes, or regulations," including the National Electric Safety Code. *Id.* at 9. If Defendant installed the baler as delivered, it would have violated the code requirement of a forty-two-inch clearance from the operation's position at the control panel. *Id.* at 8, 11; (Doc 72-2 at 18-19); (Doc 72-4 at 67).

With respect to Defendant's claim that the record is devoid of a change order showing the panel relocation, McGettigan testified that any questions as to the baler's clearance upon commissioning could occur through "just a phone call." *Id.* at 11-12; (Doc 72-4 at 93). Additionally, Jacobs testified that

- 13 -

Defendant's project managers have "discretion not to issue change orders with respect to relocating control panels and that a change order may not be necessary if the scope of the work, *i.e.* relocation of the control panel to comply with agreed upon contractual provisions, is within the scope of the original contracted work." *Id.* at 12 (citing (Doc 72-1 at 116)).

Plaintiff states that its expert, George Saunders ("Saunders") will testify that:

> [Defendant] was the sole entity with the means and opportunity to relocate the control panel, given that [Plaintiff]'s involvement ended upon shipment of the [b]aler with the control panel and latch on the same side and Walmart had not modified the [b]aler after its installation; thereby, creating a window of when the control panel was relocated, from the time the [b]aler arrived to Walmart until the time [Defendant] completed installing and commissioning the [b]aler.

*Id.* at 12-13 (citing (Doc. 72-2 at 14-15)).

Viewing all evidence and inferences drawn therefrom in the light most favorable to Plaintiff as the non-moving party, the Court finds that Plaintiff has shown sufficient evidence which could support a jury verdict in its favor with respect to contribution. *Boyle*, 139 F.3d at 393; *Gates*, 482 F.3d at 647. Therefore, Defendant's motion for summary judgment on grounds of contribution will be denied.

- 14 -

## B. Indemnification

Defendant also argues that it is entitled to summary judgment for Plaintiff's claim for indemnification. (Doc. 67). Unlike the right of contribution, common law indemnity is an "equitable remedy that shifts the *entire responsibility* for damages from a party who, without any fault, has been required to pay because of a legal relationship to the party at fault." *EQT Production Company v. Terra Services, LLC*, 179 F.Supp.3d 486, 493 (W.D.Pa. 2016) (quoting *City of Wilkes–Barre v. Kaminski Bros.*, 804 A.2d 89, 92 (Pa. Commw. 2002)) (emphasis added). "Common law indemnity is not a *fault-sharing* mechanism that allows a party, whose negligence was minor, to recover from the tortfeasor whose negligence was dominant. It is a *fault-shifting* mechanism that comes into play when a defendant held liable by operation of law seeks to recover from a defendant whose conduct actually caused the loss." *Id*. (emphasis added).

Under Pennsylvania law, common law indemnity requires at least two elements: (1) a preexisting legal relationship between the indemnitor and the indemnitee, and (2) a tort. *Kroger Co. v. New Enterprise Stone & Lime Co., Inc.*, 2018 WL 4615955, at *4 (E.D.Pa. Sept. 25, 2018) (quoting *Builders Supply Co. v. McCabe*, 77 A.2d 368, 370 (Pa. 1951)). A "legal relationship" in this context has generally arisen from either *respondeat superior* or liability

- 15 -

between parties along a chain of distribution. *Id.* For example, in *Pansini v. Trane Co.*, a defendant's sale of a heating and air conditioning unit to a third-party defendant, who in turn sold, designed, and installed the unit in the plaintiff's home, created a legal relationship. *Kroger Co.*, 2018 WL 4615955, at *4 (citing *Pansini v. Trane Co.*, 2018 WL 2129453, at *2 (E.D. Pa. May 9, 2018)).

> The Pennsylvania Supreme Court has stated:

> > The right of *indemnity* rests upon a difference between the primary and the secondary liability of two persons each of whom is made responsible by the law to an injured party. It is a right which ensures to a person who, *without active fault on his own part*, has been compelled, by reason of some legal obligation, to pay damages occasioned by the initial negligence of another, and for which he himself is only secondarily liable.

*McCabe*, 77 A.2d at 370 (emphasis added). "A contribution claim is distinct from an indemnity claim in that two parties who have both committed wrongs may share some blame through contribution, but a party seeking indemnity is one who is held liable as a matter of law for another party having committed the actual, underlying tortious conduct giving rise to the plaintiff's claim." *Bachtell v. Gen. Mills, Inc.*, 422 F. Supp. 3d 900, 907 (M.D.Pa. 2019).

This Court having already determined that there is a genuine issue of material fact with respect to contribution *supra*, thus, the inquiry turns on whether there is a genuine issue of material fact as to whether a jury could find that Plaintiff is wholly blameless for Dunsmore's injury.

Defendant argues that Plaintiff cannot establish that it is wholly blameless, because the "record is replete with evidence from which a reasonable juror *could* conclude that [Plaintiff] had fault[.]" (Doc. 69 at 19) (emphasis added). Defendant raises potential avenues for which Plaintiff may be at fault, including evidence that: (1) Plaintiff failed to ensure that all safety decals were properly positioned; (2) Plaintiff's operator's manual contains illustrations showing the control panel and latch on the opposite side of the baler; and (3) Plaintiff has manufactured horizontal balers with the control panel opposite the latch. (Doc. 69 at 19-20).

However, whether a reasonable juror *could* conclude that Plaintiff is at fault is not the inquiry—the question is simply whether, viewed in the light most favorable to Plaintiff, sufficient evidence exists for a reasonable jury to find that Plaintiff is blameless for Dunsmore's injury. *Boyle*, 139 F.3d at 393; *Gates*, 482 F.3d at 647. The Court finds in the affirmative.

With respect to Plaintiff previously approving designs with the control panel on the opposite side of the latch, Staggs testified that in such rare

occurrences, designs are only approved after completing a safety evaluation of the design. (Doc. 72 at 15). Moreover, Plaintiff argues that how it has designed balers not involved in Dunsmore's incident is immaterial. *Id.* at 16. Plaintiff suggests that Defendant, and Defendant alone, was the entity which had the means and opportunity to move the control panel. (Doc. 72 at 8); (Doc. 72-8 at 80, 101, and 131-32). Moreover, Plaintiff shipped the baler fully assembled, with the control panel mounted on the same side as the latch. (Doc. 68, ¶ 21); (Doc. 68-5 at 35-36); (Doc. 73, ¶ 21); (Doc. 72-3 at 68).

Viewing the facts in the light most favorable to the Plaintiff, this Court finds that a jury may hold that Plaintiff is entitled to indemnification, which is supported by evidence suggesting that: (1) Plaintiff had no involvement with the baler after it was shipped; (2) Defendant was under a contractual obligation to ensure that the baler was in compliance with all applicable laws, which would require relocating the control panel; and (3) the panel's relocation need not have been approved in writing. *See* Discussion, *supra* p. 13-14.

Recognizing that at the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial," the Court holds that a genuine issue of material fact exists as to whether Plaintiff is wholly

blameless. *Anderson*, 477 U.S. at 249. Therefore, this Court will deny Defendant's motion for summary judgment with respect to indemnification.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment will be **DENIED**. An appropriate order will follow. Additionally, by separate Order the Court will set a date for the final pretrial conference and trial in this matter.


*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: April 28, 2026**
22-412-03

- 19 -